IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| KYLE SANBORN, | CV 18-00037-H-DLC-JTJ |
|---|---|
| Plaintiff, | |
| vs. | FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE |
| RAEANNE ROLAND, | |
| Defendant. | |

This matter comes before the Court on Plaintiff Kyle Sanborn's Complaint (Doc. 2) alleging violations of his First, Fourth, and Eighth Amendment rights under the United States Constitution. The Complaint fails to state a claim upon which relief may be granted and therefore this matter should be dismissed.

## I. STATEMENT OF THE CASE

### A. Parties

Plaintiff Kyle Sanborn is proceeding in forma pauperis and without counsel. He is incarcerated at the Montana State Prison (MSP) in Deer Lodge, Montana. The named Defendant is Raeanne Roland, a correctional officer at the prison. (Complaint, Doc. 2 at 1.)

### B. Statement of Facts

Mr. Sanborn alleges that on the date of the incident at issue he was housed

1

in MSP's High Side Unit Two (HSU2) which is a high-security housing facility located approximately 100 yards from the high-security dining hall.  Inmates have to walk between the buildings to get their meals and there is no protection from cold, wind, snow, or rain between the buildings.

On December 12, 2017, at approximately 6:40 a.m., Mr. Sanborn exited the dining hall after eating breakfast and was stopped by Officer Roland for a routine pat-search.  Officer Roland ordered Mr. Sanborn to unzip his coat.  He complied but stated, ''If you're going to be having people unzip their coats, you should really be doing this inside."  Officer Roland responded, "Don't tell me how to do my job."  Mr. Sanborn then stated, "I'm not.  I'm just saying that because it's before dawn in the middle of winter, and below freezing (temperatures)."  Officer Roland responded, "Don't tell me how to do my job.  Take your coat off."  Mr. Sanborn alleges that at the time of this incident the temperature was nine degrees Fahrenheit with high winds and snow and ice blanketing the ground.  He contends Officer Roland was wearing layers of protective gear including a knit-hat, gloves, heavy coat, and boots but he was only wearing prison-issued scrubs (the top resembles a T-shirt), tennis shoes, and a heavy coat.

The door to the dining hall was less than fifteen feet away when Mr. Sanborn stated, "If you want me to take my coat off, I will step inside and do so

2

but . . ." Officer Roland interrupted Mr. Sanborn saying, "Are you refusing a direct order?" Mr. Sanborn stated, "No, but I'm not going to take my coat off outside, before dawn, in the middle of winter, when it's below freezing."

Officer Roland then stated to Mr. Sanborn, "You're refusing a direct order!" Mr. Sanborn replied, "I'll take off my coat inside." He started to walk toward the dining hall when Officer Roland yelled, "Stop him! He refused a direct order and walked away from me." Mr. Sanborn responded, "I'm not refusing a direct order, I just don't want to take off my coat outside." Another officer handcuffed Mr. Sanborn and he was taken to punitive segregation in Locked Housing 1.

Mr. Sanborn was given a disciplinary hearing on December 14, 2017. There he argued Officer Roland's order for him to take off his coat in the freezing cold temperatures was made in retaliation for his prior comments in violation of his First Amendment rights. The Disciplinary Hearings Officer found Mr. Sanborn guilty of a #4213-Refusing to Obey a Direct Order, a major violation, and sentenced him to ten days in punitive segregation. (Complaint, Doc. 2 at 1-3.)

## II. SCREENING PURSUANT TO 28 U.S.C. §§ 1915, 1915A

### A. Standard

Because Mr. Sanborn is a prisoner proceeding in forma pauperis, the Court must review his Complaint under 28 U.S.C. §§ 1915, 1915A. Sections 1915A(b)

3

and 1915(e)(2)(B) require the Court to dismiss a complaint filed in forma pauperis and/or by a prisoner against a governmental defendant before it is served if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.

A complaint is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). "A case is malicious if it was filed with the intention or desire to harm another." *Andrews v. King*, 398 F.3d 1113, 1121 (9th Cir. 2005). A complaint fails to state a claim upon which relief may be granted if a plaintiff fails to allege the "grounds" of his "entitlement to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation omitted).

Rule 8 of the Federal Rules of Civil Procedure provides that a complaint "that states a claim for relief must contain . . . a short and plain statement of the claim showing that the [plaintiff] is entitled to relief." Fed.R.Civ.P. 8(a)(2). This rule requires a complaint to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).

A complaint's allegations must cross "the line from conceivable to plausible." *Iqbal*, 556 U.S. at 680. There is a two-step procedure to determine

4

whether a complaint's allegations cross that line. *See Twombly*, 550 U.S. at 556; *Iqbal*, 556 U.S. 662. First, the Court must identify "the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679, 680. Factual allegations are not entitled to the assumption of truth if they are "merely consistent with liability," or "amount to nothing more than a 'formulaic recitation of the elements' of a constitutional" claim. *Id.* at 679, 681. A complaint stops short of the line between probability and the possibility of relief where the facts pled are merely consistent with a defendant's liability. *Id.* at 678.

Second, the Court must determine whether the complaint states a "plausible" claim for relief. *Iqbal*, 556 U.S. at 679. A claim is "plausible" if the factual allegations, which are accepted as true, "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. This inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted). If the factual allegations, which are accepted as true, "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief." *Id.* (*citing* Fed.R.Civ.P. 8(a)(2)).

"A document filed *pro se* is 'to be liberally construed,' and 'a *pro se*

complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardu*, 551 U.S. 89, 94 (2007); *cf*. Fed. Rule Civ. Proc. 8(e) ("Pleadings must be construed so as to do justice").

### B. Analysis

#### 1. First Amendment--Retaliation

In his first claim, Mr. Sanborn contends Officer Roland retaliated against him based upon his right to exercise free speech. He argues that Officer Roland ordered him to take off his coat and thus be exposed to below freezing temperatures because Mr. Sanborn stated, " . . . you should really be doing this inside." He argues Officer Roland had already completed her pat-search of him when she asked him to remove his jacket and requiring him to remove his jacket did not reasonably advance any legitimate correctional goal.

"[T]he constitutional rights that prisoners possess are more limited in scope than the constitutional rights held by individuals in society at large. In the First Amendment context, for instance, some rights are simply inconsistent with the status of a prisoner or with the legitimate penological objectives of the corrections system." *Shaw v. Murphy*, 532 U.S. 223, 229 (2001) (*citing Pell v. Procunier*, 417 U.S. 817, 822 (1974)). Within the prison context, a viable claim of First

Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal. *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005). A prisoner must show that the type of activity he was engaged in was constitutionally protected, that the protected conduct was a substantial or motivating factor for the alleged retaliatory action, and that the retaliatory action advanced no legitimate penological interest. *Hines v. Gomez*, 108 F.3d 265, 267 (9th Cir. 1997) (inferring retaliatory motive from circumstantial evidence). The prisoner bears the burden of pleading and proving absence of legitimate correctional goals for the conduct of which he complains. *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995).

Prisoners' retaliation claims must be evaluated in light of concerns over "excessive judicial involvement in day-to-day prison management, which 'often squander[s] judicial resources with little offsetting benefit to anyone.' " *Pratt*, 65 F.3d at 807 (*quoting Sandin v. Conner*, 515 U.S. 472, 482 (1995)). In particular, courts should " 'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to

7

be retaliatory." *Id.* (*quoting Sandin*, 515 U.S. at 482).

Mr. Sanborn alleges that Officer Roland directed him to take off his coat in freezing cold temperatures because he made the statement that she should be doing the pat down searches inside. (Complaint, Doc. 2 at 3.) The Court finds that this allegation does raise a plausible retaliation claim. Not every retaliatory act taken by an official can be considered an adverse action that chills the exercise of protected speech. The proper inquiry asks whether the official's action "would chill or silence a person of ordinary firmness from future First Amendment activities." *Mendocino Envt'l Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1300 (9th Cir. 1999) (internal quotation marks omitted). The Court finds that simply requiring Mr. Sanborn to take off his coat would not chill or silence a person of ordinary firmness from future First Amendment activities and as such the complaint stops short of the line between probability and the possibility of relief. *See Iqbal*, 556 U.S. at 678. This claim will be recommended for dismissal.

### 2. Fourth Amendment–Search

In his second claim, Mr. Sanborn contends Officer Roland violated his Fourth Amendment right to be free from unreasonable searches and seizures. He argues Officer Roland acted without "penological merit" and with the intent to inflict pain when she ordered him to take his coat off thus exposing him to

8

hazardous and unsafe conditions. He further argues searches and seizures used to retaliate against First Amendment protected activity are unreasonable and therefore unconstitutional.

The Fourth Amendment prohibits unreasonable searches. U.S. Const. amend IV. The Ninth Circuit has held that the Fourth Amendment right of people to be secure against unreasonable searches and seizures "extends to incarcerated persons; however, the reasonableness of a particular search is determined by reference to the prison context." *Michenfelder v. Sumner*, 860 F.2d 328, 332 (9th Cir. 1988). Therefore, the Fourth Amendment analysis includes a "balancing of the need for a particular search against the invasion of personal rights that search entails." *Bell v. Wolfish*, 441 U.S. 520, 559 (1979); *accord Bull v. City and County of San Francisco*, 595 F.3d 964, 972 (9th Cir. 2010); *Nunez v. Duncan*, 591 F.3d 1217, 1227 (9th Cir. 2010). This inquiry includes consideration of "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Bell*, 441 U.S. at 559; *accord Bull*, 595 F.3d at 972; *Michenfelder*, 860 F.2d at 332.

Here Mr. Sanborn was merely asked to remove his coat. There was no actual search other than the pat down search which is not at issue. Further, Mr. Sanborn admits he was clothed under his coat. Although it may have been cold

outside, the Court finds that the mere act of asking Mr. Sanborn to remove his coat did not rise to the level of a Fourth Amendment violation.

### 3. Eighth Amendment

In his third claim, Mr. Sanborn alleges Officer Roland violated his Eighth Amendment right to be free from cruel and unusual punishment when she ordered him to remove his coat, exposing him to unsafe conditions. He contends that unsafe conditions that pose an unreasonable risk to a prisoner's future health violate the Eighth Amendment, even if damage has not yet occurred. He argues Officer Roland acted with deliberate indifference and actual malice toward his well-being.

"The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement." *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). Prison officials therefore have a "duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety." *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000) (citations omitted). "[R]outine discomfort inherent in the prison setting" does not rise to the level of a constitutional violation. *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2006). Extreme deprivations are required to make out a conditions of

confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citations and quotations omitted). The circumstances, nature, and duration of the deprivations are critical in determining whether the conditions complained of are grave enough to form the basis of a viable Eighth Amendment claim. *Johnson*, 217 F.3d at 731.

A prisoner claiming an Eighth Amendment violation must show (1) that the deprivation he suffered was "objectively, sufficiently serious;" and (2) that prison officials were deliberately indifferent to his safety in allowing the deprivation to take place. *Morgan*, 465 F.3d at 1045 (*quoting Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Thus, a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that an inmate faces a substantial risk of harm and disregards that risk by failing to take reasonable measures to abate it. *Farmer*, 511 U.S. at 837–45.

Numerous courts have dismissed outdoor strip search claims where the prisoner has not alleged that he suffered any objectively serious injury as a result of the search. *See Malo v. Hernandez*, No. EDCV 13-1781-SJO JPR, 2014 WL 7246730, at *4 (C.D. Cal. Dec. 18, 2014), aff'd, No. 15-55035, 2016 WL 5115397 (9th Cir. Sept. 21, 2016) (dismissing Eighth Amendment claim for failure to show

any objectively serious injury as a result of an outdoor strip search); *Tyler v. Watson*, No. CIV.A. 7:09-CV-00174, 2009 WL 4110304, at *3 (W.D. Va. Nov. 25, 2009) (granting summary in favor of prison officials for prisoner's Eighth Amendment claim involving a five minute long outdoor strip search in thirty-degree temperatures because there was no evidence he "suffered any objectively serious injury").

Mr. Sanborn's Complaint is devoid of sufficient facts that rise to the level of an Eighth Amendment constitutional violation. He alleges Officer Roland instructed him to remove his coat in the cold weather but he never actually removed his coat. He does not allege conditions which were so "objectively, sufficiently serious" to support a cognizable claim for violation of the Eighth Amendment.

### III. CONCLUSION

The Court has considered whether Mr. Sanborn's Complaint is frivolous, malicious, fail to state a claim, or seek solely monetary relief from a defendant who is immune. *See* 28 U.S.C. §§ 1915(e)(2), 1915A(b). Mr. Sanborn's allegations fail to state a plausible claim upon which relief may be granted.

For the reasons set forth above, the Court finds that the deficiencies set forth here could not be cured by the allegation of additional facts. *See* Fed. R. Civ. P

12(b)(6); *Iqbal*, 556 U.S. at 678. Amendment would be futile because any new facts consistent with the complaint could not cure the deficiencies identified in the complaint. *Schreiber Distrib. Co. V. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393 (9th Cir. 1986). The Court therefore recommends that the case be dismissed without leave to amend and with prejudice for failure to state a claim. *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("Denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile.").

Based upon the foregoing, the Court issues the following:

## RECOMMENDATIONS

1. This matter should be DISMISSED for failure to state a federal claim.

2. The Clerk of Court should be directed to close this matter and enter judgment in favor of Defendants pursuant to Rule 58 of the Federal Rules of Civil Procedure.

3. The Clerk of Court should be directed to have the docket reflect that the Court certifies pursuant to Rule 24(a)(3)(A) of the Federal Rules of Appellate Procedure that any appeal of this decision would not be taken in good faith. No reasonable person could suppose an appeal would have merit. The record makes plain the Complaint lacks arguable substance in law or fact.

4.  The Clerk of Court should be directed to have the docket reflect that this dismissal counts as a strike pursuant to 28 U.S.C. § 1915(g) because Mr. Sanborn failed to state a claim upon which relief may be granted.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT

Mr. Sanborn may file objections to these Findings and Recommendations within fourteen (14) days after service (mailing) hereof.[1]  28 U.S.C. § 636.  Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

This order is not immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Fed.R.App.P. 4(a), should not be filed until entry of the District Court's final judgment.

DATED this 29th day of October, 2018.

                                          */s/ John Johnston*
                                          John Johnston
                                          United States Magistrate Judge

---

[1] Rule 6(d) of the Federal Rules of Civil Procedure provides that "[w]hen a party may or must act within a specified time after being served and service is made under Rule 5(b)(2)(C) (mail) . . . 3 days are added after the period would otherwise expire under Rule 6(a)."  Therefore, since Mr. Sanborn is being served by mail, he is entitled an additional three (3) days after the period would otherwise expire.